UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             |
LARRY FERNANDEZ                                              |
                                                             |
                        Plaintiff,                           |
                                                             |        08 CV 4294 (KMW)
            -against-                                         |
                                                             |        OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF                                  |
CORRECTION, WARDEN ROBERT SHAW,                              |
CORRECTION CAPTAIN JOHN DOE, AND                             |
CORRECTION OFFICER THORNTON,                                 |
                                                             |
                        Defendants.                          |
                                                             |
-------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

        Plaintiff Larry Fernandez, proceeding pro se, brings this action pursuant to 42

U.S.C. § 1983.  Plaintiff alleges that, while incarnated at Rikers Island, he suffered a

fractured jaw as a result of an assault by another inmate.  Plaintiff claims that Defendants

New York City Department of Correction ("DOC"), Warden Robert Shaw, Correction

Captain "John Doe," and Correction Officer Thornton ("Defendants") failed to protect

him from the assault, and failed to attend to his medical needs, in violation of the Eighth

and Fourteenth Amendments.

        Defendants DOC and Warden Shaw move to dismiss the complaint pursuant Rule

12(b)(6) of the Federal Rules of Civil Procedure on the grounds that:  (1) Plaintiff fails to

state a claim for deliberate indifference to his safety under § 1983; (2) Plaintiff fails to

state a claim for deliberate indifference to his medical needs under § 1983; (3) Plaintiff's

claims against Warden Shaw must be dismissed because he was not personally involved

in the alleged deprivations; (4) Plaintiff's claims against DOC must be dismissed because

1

DOC is not a suable entity; (5) to the extent Plaintiff's Complaint is construed to name the City of New York as a defendant, Plaintiff has failed to state a <u>Monell</u> claim for municipal liability; and finally (6) Plaintiff's claims must be dismissed, in any event, because he failed to exhaust administrative remedies as required by Section 1997e(a) of the Prison Litigation Reform Act ("PLRA").

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss. Specifically, the Court concludes that (1) Plaintiff fails to state a clam for deliberate indifference to his safety; (2) Plaintiff fails to state a claim for deliberate indifference to his medical needs; (3) Plaintiff's claims against Warden Shaw must also be dismissed for lack of personal involvement; and (4) Plaintiff fails to state a claim for municipal liability against either DOC or the City.[1]   As set forth in greater detail below, the Court dismisses Plaintiff's claims without prejudice. If Plaintiff wishes to continue this action, Plaintiff shall file an amended complaint not later than May 26, 2010.

## BACKGROUND

I.  Factual Allegations

Plaintiff alleges that, on or about December 24, 2005, he was incarcerated at the Vernon C. Bain Correction Center ("VCBC") on Rikers Island. Plaintiff alleges that, at approximately 2:00 p.m., he was brushing his teeth in the bathroom of the "dorm" area, when another inmate, Simmon Elliot, "[c]rept up[] behi[n]d[]" him, and began punching

---

[1] Plaintiff, it appears, has not served his complaint on Correction Officer Thornton. Nonetheless, because the Court finds that Plaintiff fails to state a claim for liability under § 1983 against any official at the prison, the Court dismisses Plaintiff's claims against Correction Officer Thornton. For the same reason, the Court dismisses Plaintiff's claims against Correction Captain "John Doe."

him in the jaw with a closed fist.[2]  (Compl. ¶ II.)  Plaintiff alleges that, at the time of the

assault, no officers were monitoring the dorm area (which the complaint refers to as

station "B").  Plaintiff alleges that Correction Officer "Thornton" was at another station

(station "A"), where she was "joking around with []other officers."  (Id.)  Plaintiff alleges

that when Officer Thornton saw the altercation between Plaintiff and inmate Simmons,

she came to the dorm area, separated Plaintiff from inmate Simmons, and "after a couple

of hours" removed inmate Simmons from the dorm area.[3]  (Id.)  Plaintiff alleges that, at

around 8:15 p.m., he noticed that his face "had started to swell up," and that he then

requested medical attention.  Plaintiff alleges that the officer on duty called a captain, and

that the captain sent Plaintiff to the medical clinic.  The doctors at the clinic informed

Plaintiff that his jawbone was fractured.  (Id.)

     Plaintiff alleges that he was taken to Bellevue hospital where he underwent

surgery to repair his jaw.  (Id.)  Plaintiff alleges that, on or about December 28, 2005,

Plaintiff was released from Bellevue hospital and taken back to Rikers Island.  Plaintiff

alleges that he was unable to eat for "a couple of days" because his "mouth was wired

shut."  (Id.)  Plaintiff claims that, for the remainder of his stay at Rikers Island, he "never

received medical treatment []or medication," and that he was not transferred to a

"medical facility to receive proper medical care."  (Id.)

     Finally, Plaintiff states that he never filed a grievance at the prison because he did

not understand prison rules and "did not know about Grievance or law."  (Id. ¶ IV, E, F.)

---

[2] Defendants assert that, it appears from their review of the prison records, that the inmate who
allegedly assaulted Plaintiff was named "Leon Simmons."  (Defs. Mem. at 3 n.2.)
[3] Defendants assert, from their review of the prison records, that Plaintiff's complaint incorrectly
identifies Correction Officer "Thornton" as the officer involved, and that, instead, Correction
Officer "Bolling" appears to have responded to the altercation.  For the purposes of this motion,
the Court will continue to refer to the officer involved as Officer "Thornton."

II.  Procedural History

On May 7, 2008, Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging a deprivation of his civil rights under the Eighth and Fourteenth Amendments. (Dkt. No. 2.)  Plaintiff seeks an award, from each defendant, of $1500 per month for six years "for negligence of Plaintiff's safety."  Plaintiff also seeks an award, from the DOC, of $8 million for pain and suffering.  (Compl. ¶ V.)

On March 9, 2010, Plaintiff served his summons and complaint on DOC and Warden Shaw.  By order dated April 7, 2009, Magistrate Judge Ellis granted defendants DOC and Warden Shaw an extension of time until June 1, 2009 to answer or otherwise respond to the complaint.  (Dkt. No. 10.)  Magistrate Judge Ellis subsequently extended the deadline until July 22, 2009.

On July 22, 2009, Defendants DOC and Warden Shaw timely filed this motion to dismiss.  Plaintiff's opposition was due on August 21, 2009, and Defendants' reply, if any, was due September 4, 2009.  Plaintiff did not submit anything in opposition, and on September 9, 2009, Defendants requested that the court deem the motion fully submitted.

On October 1, 2009, this case was transferred from Judge Lynch to the undersigned.  By order dated December 1, 2009, this Court sua sponte extended the time for Plaintiff to file a response to January 15, 2010.  Plaintiff did not submit anything in opposition or request an extension of time.[4]  Thus, the Court's decision on Defendants' motion to dismiss follows.

**STANDARD OF REVIEW**

---

[4] In its December 1, 2009 Order, the Court warned that, if Plaintiff did not file an opposition or request an extension of time by January 15, 2010, the Court would consider dismissing Plaintiff's complaint for failure to prosecute pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure. The Court also explained that, after that date, the Court would not consider any subsequent submission by Plaintiff in opposition to Defendants' motion to dismiss.

For a complaint to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, Twombly, 550 U.S. at 555, and "draw[] all inferences in the plaintiff's favor," Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). When considering a motion to dismiss a pro se complaint, courts must construe the complaint liberally, and interpret it to raise the strongest arguments that it suggests. See, e.g., Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). "This is especially true when dealing with civil rights complaints." See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).

## DISCUSSION

The Court construes Plaintiff's complaint as raising two separate claims pursuant to § 1983: (1) a claim for deliberate indifference to Plaintiff's safety based on the officials' failure to prevent the assault, and (2) a claim for deliberate indifference to Plaintiff's medical needs based on the officials' failure to provide him any additional treatment at VCBC following the surgery to repair his fractured jawbone. As set forth below, Plaintiff has not alleged facts that permit the Court to reasonably infer that any officer or municipality is liable to Plaintiff for a violation of his civil rights.

I. § 1983 Claim For Deliberate Indifference to Prisoner's Safety

    A. Legal Standards

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)).   "Prison officials [thus] have a duty . . . to protect prisoners from violence at the hands of other prisoner." Farmer, 511 U.S. at 833; see also id. at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal quotation marks omitted).

However, "not . . . every injury suffered by one prisoner at the hands of another" warrants imposition of constitutional liability pursuant to § 1983. Id. Liability for such an injury is imposed only when the prison officials' actions or omissions demonstrate "deliberate indifference" to the safety of the inmates in their custody. Hayes, 84 F.3d at 620.

Where, as here, a plaintiff's claim is based on a failure to prevent harm, the test for deliberate indifference is twofold:  (1) a plaintiff must first demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm"; (2) a plaintiff must then demonstrate that the "defendant prison officials possessed sufficient culpable intent." Id.  A prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm, and he disregards that risk by failing to take reasonable measures to abate the harm. Id.; see Farmer, 511 U.S. at 837 (explaining that this state of mind is "more blameworthy than negligence" and is "equivalent to criminal recklessness").

B.  Application

1. Substantial Risk of Harm

Plaintiff argues that the absence of officers in the immediate vicinity of the dorm area (station-B) posed a substantial risk of serious harm to inmate safety.  Defendants argue that Plaintiff fails to explain how having an officer present could have prevented the attack by inmate Simmons.  (See Compl. ¶ 2 (alleging that Simmons "[c]rept up[] behi[n]d[]" him, and began punching him in the jaw with a closed fist).)  Defendants also argue that Officer Thornton's actions demonstrate that reasonable measures were taken to protect inmates in the area:  according to the Complaint, when Officer Thornton saw the altercation, she came to the area, separated inmate Simmons from Plaintiff, and, "after a couple of hours," removed inmate Simmons from the dorm area.  See George v. Burton, No. 00-Civ-143 (NRB), 2001 WL 12010, at * 3 (S.D.N.Y. Jan. 4, 2001) (noting that conditions posing a substantial risk of harm are present where "prison guards simply stand by and permit an attack to proceed"); see also McGriff v. Coughlin, 640 F. Supp. 877, 880 (S.D.N.Y. 1986) (Leval, J.) ("The Constitution does not guarantee an assault-free prison environment; it promises only reasonable good faith protection.")

It is difficult to determine, on the present record, whether and to what extent the alleged failure to station an officer at the dorm area contributed to a risk of harm to inmates at the facility.  In this case, for example, it is possible that had Officer Thornton been in the dorm area at the time of Simmons' attack, he could have prevented or interrupted the attack.  Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has alleged facts from which a court could reasonably infer a substantial risk of serious harm.  Plaintiff, however, has still failed to allege that any officer possessed sufficiently culpable intent, which is required for a finding of liability under § 1983.

2. <u>Sufficiently Culpable Intent</u>

Plaintiff's complaint fails to state facts from which a court can reasonably infer that any officer at DOC had knowledge of a risk to Plaintiff, and disregarded that risk by failing to take reasonable measures to protect Plaintiff's safety.   Plaintiff has not pled, for example, that he and inmate Simmons were involved in a prior altercation, that Simmons had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between Plaintiff and inmate Simmons.  Absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks." <u>Zimmerman v. Macomber</u>, No. 95 Civ. 882, 2001 WL 946383, at * 5 (S.D.N.Y. Aug. 21, 2001); <u>see</u> <u>King v. Dep't of Corr.</u>, No. 95 Civ. 3057, 1998 WL 67669, at * 4 (S.D.N.Y.1998) (failure to protect inmate from isolated attack did not sustain § 1983 claim).

Plaintiff does complain that, at the time of the assault, Officer Thornton was at another station "joking around" with other officers.  This allegation, however, at most supports a claim of negligence against Officer Thornton for failing to station herself at her assigned area.[5]  Mere negligence by a prison officer does not establish a claim for "deliberate indifference" to prisoner's safety.  <u>Hayes</u>, 84 F.3d at 620; <u>see</u> <u>Zimmerman</u>, 2001 WL 946383, at * 6 (holding that, where officer did not have knowledge of substantial risk to inmate's safety, "his failure to station himself at the officer's desk does not raise a constitutional question").  The facts as stated in Plaintiff's complaint thus do not support a finding of constitutional liability.

---

[5] In fact, Plaintiff specifically identified, as the basis for his requested relief, "negl[i]gence of plaintiff's safety." (Compl. ¶ 5.)  <u>See</u> <u>George v. Burton</u>, No. 00 Civ.143, 2001 WL 12010, at * 4 (S.D.N.Y. Jan. 4, 2001).

Accordingly, Plaintiff fails to state a claim for deliberate indifference to his safety.

II. § 1983 Claim For Deliberate Indifference to Prisoner's Medical Needs

A. Legal Standards

To establish a claim for deliberate indifference to a prisoner's medical needs, a prisoner must show that:  (1) as an objective matter, the alleged deprivation is "sufficiently serious"; and (2) as a subjective matter, that the "charged official [acted] with a sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  In determining whether a condition is sufficiently serious, courts consider factors such as "the existence of an injury that a reasonable medical doctor would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  In order for a prison official to possess a sufficiently culpable state of mind, he must know of, and disregard, an excessive risk to an inmate's health or safety.  Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005); see Farmer, 511 U.S. at 837.

B. Application

In this case, Plaintiff has failed to allege facts from which a court can reasonably infer that any prison official acted with deliberate indifference to his medical needs. Plaintiff alleges, in sum, that upon returning from Bellevue for surgery on his jaw, his mouth was kept wired shut, he could not eat for three days, and that he did not receive

any additional medicine or treatment.[6]  Plaintiff, however, has not alleged that he sought

any additional treatment, that any additional treatment was required, or that there was

anything prison officials could or should have done to appropriately treat Plaintiff's post-

surgery condition.   Plaintiff has failed to identify any prison official who was aware he

needed treatment, or who denied him medical care after his release from the hospital.[7]

Thus, Plaintiff fails to state a claim for deliberate indifference to his medical needs.

III.  Personal Involvement

Defendants argue that Warden Shaw must be dismissed from the litigation for

lack of "personal involvement" in the alleged constitutional deprivations.

"It is well settled in this Circuit that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under §

1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks

omitted); see Polk County v. Dodson, 454 U.S. 312, 325 ("Section 1983 will not support

a claim based on a respondeat superior theory of liability.")  In the case of a defendant-

supervisor, personal involvement is established when:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through
> a report or appeal, failed to remedy the wrong, (3) the defendant created a
> policy or custom under which unconstitutional practices occurred, or
> allowed continuance of such a policy or custom, (4) the defendant was
> grossly negligent in supervising subordinates who committed the wrongful

---

[6] For purposes of Defendants' motion to dismiss, the Court will assume that the condition described by Plaintiff, i.e., having his mouth wired shit and being unable to eat for several days, is "sufficiently serious" under the first prong of the constitutional standard.

[7] To the extent that Plaintiff also claims that he was improperly denied treatment immediately following inmate Simmons' attack, this claim is clearly without merit.  Plaintiff alleges that he, himself, discovered only at around 8:15 p.m. that evening that his face had swelled up.  Plaintiff alleges that he notified the officer on duty; that the officer called a captain; that the captain sent him to the clinic; and that he was then sent to Bellevue.  If Plaintiff himself was unaware of the extent of his injuries following the altercation, Plaintiff cannot show that prison officials knew of and disregarded a risk to his medical needs.

acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that constitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal citations omitted).

Plaintiff has not alleged how Warden Shaw was personally involved in either failing to prevent the attack or failing to attend to Plaintiff's medical needs. Accordingly, Plaintiff's claims against Warden Shaw must also be dismissed for lack of personal involvement.[8]

IV. Municipal Liability

Plaintiff named DOC as a defendant, rather than naming the City itself. Section 396 of the New York City Charter, however, provides that "[a]ll proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of an agency, except otherwise provided by law." Accordingly, DOC is not a suable entity and all claims against DOC must be dismissed. See George, 2001 WL 12010, at * 2; Echevarria v. Dep't of Corr., 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999).

Even if the Court construes Plaintiff's Complaint as naming the City as a defendant, this claim must be dismissed for failing to state a claim for municipal liability under § 1983. To establish a § 1983 claim against a municipality, a plaintiff must show that the officials who deprived him of a constitutional right acted pursuant to an official municipal policy or custom. Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978); see Reynolds v. Guliani, 506 F.3d 183, 190-91 (2d Cir. 2007). Here, Plaintiff has failed to allege that any prison official acted pursuant to a municipal policy or custom.

---

[8] In fact, Plaintiff mentions Warden Shaw only in the caption of the complaint and in a heading titled "parties in this complaint." (See Compl. ¶ 1.)

Plaintiff has also failed to allege any facts from which a court could reasonably infer that a relevant policy or custom existed, and that it contributed to Plaintiff's injuries. Instead, Plaintiff appears to allege a single, isolated episode of misconduct by correction officers at VCBC in failing to adequately provide for his safety and medical needs. Thus, Plaintiff's claim for municipal liability must be dismissed.

## V.  Failure to Exhaust Administrative Remedies Pursuant to the PLRA

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust administrative remedies before filing any federal action challenging prison conditions. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 531 (2002). As a general rule, when a plaintiff fails to exhaust his administrative remedies, the district court must dismiss the action. Neal v. Goord, 267 F.3d 116, 117-18 (2d Cir. 2001).

There are circumstances, however, in which an inmate is excused from the PLRA's exhaustion requirement. Courts in the Second Circuit consider (1) whether the administrative remedies were available to the inmate; (2) whether defendants' action interfered with plaintiff's ability to exhaust his administrative remedies; and (3) whether special circumstances justify an inmate's failure to comply with this exhaustion requirement. Brownell v. Krom, 446 F.3d 305, 311-12 (2d Cir. 2006).

In this case, Plaintiff concedes in his Complaint that he never filed a grievance under DOC's Inmate Grievance Resolution Program.[9]  Defendants have submitted the New York City DOC Inmate Grievance Resolution Program Directive, as evidence of the availability of administrative remedies to Plaintiff. (See Nguyen Decl; Ex. C.) However, according to the Directive, "complaints pertaining to an alleged assault" are "non-

---

[9] Plaintiff states that he did not file a grievance because he did not understand prison rules and because he "did not know about Grievance [procedure] or law." (Compl. ¶ IV, E, F.)

grievable" issues under the program.  (Id. at II.B.)  Therefore, it appears that Plaintiff

Plaintiff was not required to file an administrative grievance with respect to his assault

claim, and that only Plaintiff's medical needs claim is subject to the PLRA's exhaustion

requirement.

It is not clear, however, whether a medical needs claim that is reasonably

intertwined with a claim pertaining to an alleged assault is subject to the requirement of

exhaustion of administrative remedies under the DOC policy, and if so, whether the DOC

policy is nonetheless sufficiently ambiguous such that an inmate may be justifiably

excused from complying with the exhaustion requirement in a case such as this one.  See

Harris v. Bowden, No. 03 Civ. 1617 (LAP), 2006 WL 738110, at * 3 (S.D.N.Y. Mar. 23,

2006) (noting that a claim for deliberate indifference to medical needs is subject to the

requirement of exhaustion of administrative remedies under the City's grievance

program, but failing to consider whether a medical needs claim reasonably intertwined

with a non-grievable issue is also subject to the exhaustion requirement); see also

Hemphill v. New York, 380 F.3d 680, 690 (2d Cir. 2004) (explaining that "a reasonable

interpretation of prison grievance regulations may justify an inmate's failure to follow

procedural rules to the letter").  Defendants have not addressed this issue in their briefing.

Because the Court grants Defendants' motion to dismiss Plaintiff's claims, the Court does

not also consider whether Plaintiff's medical needs claim is barred by the PLRA.

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is GRANTED.  (Dkt.

No. 14.)  The Court dismisses Plaintiff's claims against Defendants Warden Shaw,

Correction Officer John Doe, and Correction Officer Thornton without prejudice.  The

Court dismisses Plaintiff's claims against DOC with prejudice.  If Plaintiff wishes to bring a claim for municipal liability, he must bring this claim against the City of New York.  Plaintiff shall file any amended complaint not later than May 26, 2010.  If Plaintiff fails to file an amended complaint by that date, the Court will enter a final order of dismissal.

Petitioner is provided with a copy of all unpublished decisions cited in this Order.

SO ORDERED.

Dated:  New York, New York
          March 29 , 2010

Kimba M. Wood
United States District Judge